UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PETER CARDINAL, JR.

VERSUS                                                          NO: CV-05-107-JJB

JOHN B. ALLAIN, SHERIFF OF
IBERVILLE PARISH, ET AL

## RULING ON DEFENDANTS' RULE 52(c) MOTION

Before the court is the Defendants' motion, brought under Fed. R. Civ. P. 52(c), for judgment as a matter of law with respect to claims brought by Plaintiff Peter Cardinal against Iberville Parish Sheriff's Deputy Jeremy Balcuns and Iberville Parish Sheriff John B. Allain under 42 U.S.C. § 1983.  Mr. Cardinal also brought claims for excessive force, vicarious liability, and punitive damages.

The parties conducted a bench trial before this court on October 29, 2007, and at the conclusion of the Plaintiff's case-in-chief, Defendants orally moved for a judgment as a matter of law pursuant to Fed. R. Civ. P. 52(c).[1] The court took that motion under advisement and the Defendants presented their case-in-chief. Defendants re-urged their motion at the conclusion of trial. Rule 52 governs motions

---

[1] Rule 52(c): If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgement as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence.  Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

1

for judgment as a matter of law in bench trials. In granting any portion of the Defendants' motion, the court must enter findings of fact and conclusions of law. *See* Fed. R. Civ. P. 52(a) & (c). Thus, the court enters the following findings of fact and conclusions of law.[2]

## **Findings of Fact**[3]

Peter Cardinal is a "jack of all trades." Throughout his career, he cleaned barges, worked at a filling station, a slaughterhouse, in an oil field as roughneck. He worked as a carpenter, a licensed electrician, and as a foreman at a pipe fabrication plant. He developed a reputation as someone who could fix or build almost anything, and he enjoyed helping people. When he slipped and hurt his wrist while working in his shed in February, 2003 he could not have imagined that such an injury would so drastically affect his way of life. It, however, did. Horse-feeding, oyster-shucking, crawfish-peeling, fishing, car-fixing, people-helping, driving, and working all became more challenging for Mr. Cardinal. Surgery in October of 2003 did not seem to make his wrist better, either.

Late in the afternoon of February 13, 2004, Mr. Cardinal, as he did each day, went to meet his buddies at "V & C's" where he drank two beers and visited with his friends. From there, his daily routine continued when he drove out to his pasture to

---

[2] To the extent that any finding of fact constitutes a conclusion of law, the court hereby adopts it as such, and to the extent that any conclusion of law constitutes a finding of fact, the court hereby adopts it as such.

[3] The court makes these findings based on Mr. Cardinal's evidence.

tend to his horse where he stayed until roughly 9:00pm.  And since this was the eve of Valentine's Day, Mr. Cardinal next went to a Winn Dixie store to buy his wife a present— a banzai tree that she wanted.

Next, however, instead of going home, Mr. Cardinal went in search of some "relaxation."  He found it at a gentleman's club called Night Dreams, where he stayed until midnight.  He remembers consuming two beers and taking a third with him.[4]  But just like he did not know how much a wrist injury would change his way of life, he did not know a visit to Night Dreams would soon turn into a nightmare.

After leaving Night Dreams in the early morning hours of February 14, 2004, Mr. Cardinal made his way on to Louisiana Highway 1 to head home.  At the same time, Deputy Jeremy Balcuns was on patrol at the same stretch of roadway when he observed Mr. Cardinal's vehicle parked across both of the southbound lanes of the highway and obstructing the flow of traffic.  Deputy Balcuns stopped his vehicle, and using his unit's PA system, advised Mr. Cardinal to move his vehicle off the roadway.  When Mr. Cardinal did not respond to Deputy Balcuns' request, Deputy Balcuns activated his emergency lights.  Deputy Balcuns followed roughly 20 to 25 feet behind Mr. Cardinal as Mr. Cardinal accelerated southbound on Highway 1, exceeding the speed limit.  As Mr. Cardinal proceeded down Highway 1, Deputy Blacuns next activated his sirens and advised the dispatcher by radio of the incident.

---

[4] Mr. Cardinal also took at least two Valium pills on February 13, 2003. Valium, which acts as an anxiety depressant, is not recommended for use in combination with alcohol.

3

Deputy Balcuns continued to pursue Mr. Cardinal's vehicle and observed him running the vehicle onto the curb several times and weaving onto the shoulder.

As Mr. Cardinal neared the intersection of Highway 1 and Tenant Road, he slammed on his breaks, put his vehicle in reverse and hit Deputy Balcuns' patrol unit.[5] After impact, Deputy Balcuns' moved his unit approximately 15 feet back and exited his unit. At the same time, Mr. Cardinal exited his vehicle and Deputy Balcuns noticed that he was stumbling, staggering and appeared intoxicated. Deputy Balcuns proceeded to approach Plaintiff and advised him that he was under arrest. When he attempted to handcuff Mr. Cardinal, Mr. Cardinal jerked away from Deputy Balcuns and cursed him. Deputy Balcuns made a second attempt to cuff Mr. Cardinal who again responded by jerking away and pushing Deputy Balcuns. Deputy Balcuns then grasped Mr. Cardinal's right arm and conducted a straight arm bar take down tactic to bring Mr. Cardinal to the ground. Once on the ground Deputy Balcuns handcuffed Mr. Cardinal. However, during the take down, Mr. Cardinal could not break his own fall, and his face impacted the concrete of the roadway, causing some teeth and a bridge to fall out.

Thereafter, Mr. Cardinal was placed into a patrol unit (operated by Deputy Wayne Miller, an officer who arrived at the scene after the incident occurred) and was transported to the jail for booking and breath-testing. While at the jail, Mr.

---

[5] Mr. Cardinal testified to driving a 3-quarter ton pickup truck which handles like a "school bus."

Cardinal refused to sign the rights form or take an Intoxilizer test. A urine screen was performed and was positive for benzodiazepine.[6]

The court finds as a fact, that during Deputy Balcuns' pursuit, Mr. Cardinal was intoxicated and should have been aware of the sirens and the police lights. Though Mr. Cardinal proffers a different series of events and does not recall seeing any police lights or hearing any sirens in his rearview mirror, the court finds that his memory was impaired as a result of the beers he consumed and the Valium he ingested prior to driving his vehicle.

## Conclusions of Law

**1.     42 U.S.C. § 1983**

Mr. Cardinal asserts claims against the Defendants pursuant to 42 U.S.C. § 1983, alleging violations of his 14th Amendment rights of liberty and due process, Fourth Amendment rights to be free from unreasonable searches and seizures of his person, Fifth Amendment rights to be free from deprivation of life and liberty without due process of law, Eighth and Fourteenth Amendment rights to be free from cruel or unusual punishments, and his right to be provided with necessary medical attention.

A person may sue for an award of money damages against anyone who, "under color" of any State law or custom, intentionally violates his rights under the

---

[6] The result of the urine screen is consistent with Mr. Cardinal's ingestion of Valium pills.

Constitution of the United States. The plaintiff must prove each of the following by a preponderance of his evidence: (a) That the defendants intentionally committed acts that violated the plaintiff's Federal constitutional right; (b) that in doing so the defendants acted "under color" of the authority of the State of Louisiana; and (c) That the defendants' acts were the legal cause of the plaintiff's damages.

State or local officials act "under color" of the authority of the state when they act within the limits of their lawful authority. However, they also act "under color" of the authority of this state when they act without lawful authority or beyond the bounds of their lawful authority if their acts are done while the officials are purporting or pretending to act in the performance of their official duties. An official acts "under color" of state authority if he abuses or misuses a power that he possess only because he is an official.

Only the most egregious official conduct is actionable under the Fourteenth Amendment. In order to state a due process challenge to abusive conduct by a state actor, Mr. Cardinal must prove that the behavior of the government officer was so egregious and so outrageous that it may fairly be said to shock the contemporary conscience. Conduct intended to injure someone that is not justifiable by any government interest is the sort of official action most likely to rise to the conscious-shocking level. This means conduct that is truly outrageous, uncivilized, and intolerable. *See* United State Constitution, Fourteenth Amendment; *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Collins v. City of*

*Harker Heights, Tex.,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

Mr. Cardinal has failed to satisfy his burden of proving that Deputy Balcuns' conduct was so egregious and so outrageous that it may fairly be said to shock the contemporary conscience. Mr. Cardinal has not demonstrated by a preponderance of the evidence that Deputy Balcuns intended to injure him, or that his actions were not justifiable by any government interest. The evidence presented by Mr. Cardinal shows that Deputy Balcuns noticed a motorist who was swerving southbound on Highway 1 in Iberville Parish in the early hours of the morning. As Deputy Balcuns stopped Mr. Cardinal, Mr. Cardinal put his vehicle in reverse and hit Deputy Balcuns' patrol unit. In handcuffing Mr. Cardinal, Deputy Balcuns acted reasonably under the circumstances after encountering someone who he thought showed signs of intoxication, who rammed his police unit, and who twice, during the arrest, "jerked away" from him. In short, the actions of deputy Balcuns do not rise to the level of outrageous, uncivilized and intolerable conduct.

**2.     Excessive Force**

All claims that law enforcement officers have used excessive force in the course of an arrest are analyzed under the "reasonableness" standard of the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). The "reasonableness" of particular force used must be judged from the perspective of a reasonable officer at the scene, rather than with the 20/20

vision of hindsight. *See Graham v. Connor*, 490 U.S. at 396. The plaintiff must show that the force used was not only excessive, but clearly more force that the force needed to subdue him. *See Carter v. Fenner,* 136 F.3d 1000, 1010 (5th Cir. 1998).

Factors to be considered in making a determination of whether the force used was reasonable under the circumstances include: the known character of the arrestee; the risks and dangers faced by the officer; the nature of the offense or behavior involved; the chance of escape if the particular means are not employed; the existence of alternative methods of arrest or subduing the arrestee; the physical size, strength and weaponry of the officers as compared to that of the arrestee; and the exigencies of the moment. One of the factors taken into consideration when determination whether a police officer used reasonable or unreasonable force is whether the plaintiff was intoxicated, belligerent, offensive, or uncooperative. *Wilson v. City of Shreveport*, 921 So.2d 254, 258, 40, 383 (La. App. 2nd Cir. 2/10/06). *See also Crawford v. Maryland Casualty Co.,* 169 So.2d 612 (La. App. 2nd Cir. 1964).

Deputy Balcuns used a straight arm bar take down tactic to bring Mr. Cardinal to the ground.[7] Such a tactic was not excessive force because Mr. Cardinal was jerking way from Deputy Balcuns to prevent Deputy Balcuns from handcuffing him. In addition, when Deputy Balcuns made a second attempt to handcuff Mr. Cardinal,

---

[7] Deputy Balcuns physically demonstrated the straight arm bar take down tactic on Plaintiff's counsel when he was examined during Plaintiff's case-in-chief.

8

Plaintiff again responded by jerking away and pushing Deputy Balcuns. It was Mr. Cardinal's conduct and intoxicated state which created the situation at issue.

The straight arm bar take down at issue occurred only after Mr. Cardinal jerked away from and pushed Deputy Balcuns. There was no evidence presented that the tactic Deputy Balcuns used was out of the ordinary, or unnecessary given the circumstances. There was also no evidence presented that the tightness of the handcuffs constituted excessive force. The length of time Mr. Cardinal was in handcuffs did not constitute excessive force because he was in handcuffs only long enough for the officers to complete their official duties on the scene and transport him to Iberville Parish jail.

### 3. Defendants' Claim for Costs, Including Attorneys' Fees and Expert Witness Fees

Defendants contend that they are entitled to an award of all costs of this action, including reasonable attorneys' fees and expert witness fees, pursuant to 42 U.S.C. § 1988 since they are a prevailing party in this action. As a matter of course, costs are awarded to the Defendants and may be assessed upon the filing of a Motion to Tax Costs directed to the Clerk of Court pursuant to Fed. R. Civ. P 54(d)(1).[8]

As to attorney's fees: A prevailing defendant in a §1983 action may recover

---

[8] Rule 54(d)(1) provides in relevant part: Such costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the action of the clerk may be reviewed by the court.

attorney's fees "only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1937 n.2, 76 L.Ed.2d. 40 (1983). As the Fifth Circuit explains:

> The district court should award the prevailing defendant attorney's fees only if the Plaintiffs' action was "frivolous, unreasonable, or without foundation." *White v. South Park Indep. School Dist.*, 693 F.2d 1163, 1169-70 (1982) (citation omitted). A suit is frivolous if it is "so lacking in arguable merit as to be groundless or without foundation...." *See Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1140-41 (5th Cir.1983). In determining whether a suit is frivolous, the district court should look to factors such as whether the Plaintiffs established a prima facie case, whether the defendant offered to settle, and whether the court dismissed the case or held a full trial. See *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir.1991).

*Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir. 1999).

This court held a full trial. Thus, Mr. Cardinal's action was not frivolous, unreasonable, or without foundation. As such, we decline to award attorneys' fees in this matter.

## **Conclusion**

While there is no question that Mr. Cardinal faced a regrettable series of events before, during, and after February 14, 2003, today's ruling is an unfortunate consequence. The standards set forth by the Fifth Circuit and the Supreme Court are, however, clear and this court cannot deviate from that well settled precedent. The court finds that Mr. Cardinal's evidence is both legally and factually insufficient to support a judgment in his favor.

Accordingly, the Rule 52(c) motion by the Defendants is hereby **GRANTED**

and all of plaintiff's claims are hereby **DISMISSED**.  The court need not consider Plaintiff's claims for vicarious liability and punitive damages.  Costs are to be awarded to Defendants following motion to the Clerk of Court.  Additionally, I **DECLINE** to award attorneys' fees to Defendants in this matter.

Baton Rouge, Louisiana, <u>November 5, 2007</u>.

JAMES J. BRADY, JUDGE
MIDDLE DISTRICT OF LOUISIANA